# Begos Horgan & Brown LLP
Attorneys At Law

Patrick W Begos
Christopher G Brown
Michael F Horgan Jr

www.begoshorgan.com

**MEMO ENDORSED**

327 Riverside Avenue
Westport Connecticut 06880
Tel 203.226.9990
Fax 203.222.4833

7 Pondfield Road
P O Box 369
Bronxville New York 10708.0369
Tel 914.961.4441
Fax 914.961.4442

July 22, 2009

**BY FEDERAL EXPRESS**

Hon. Debra Freeman
United States District Court
500 Pearl Street
New York, NY 10007

USDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/7/09

JUL 23 2009

Re: **Douglas v. First Unum Life Ins. Co.**
    **05 Civ. 2447 (VM)(DF)**

Dear Judge Freeman:

    This firm represents defendant, First Unum Life Insurance Company ("First Unum"). I write regarding several disputes between the parties regarding the Court's June 11, 2009 discovery orders. The disputes concern: (i) the period for which First Unum must produce performance reviews (for the Court's *in camera* review) and incentive compensation information; (ii) the grounds that could lead the Court to order production of a performance review to plaintiff; and (iii) what documents shall be subject to a confidentiality order.

    Before discussing the particular disputes, I will summarize what I understand the Court ordered First Unum to produce, and what the parties have done:

1.   First Unum was ordered to produce certain information about each of the 144 "late" claims it previously identified. Plaintiff could select approximately 40 claims, and First Unum would produce redacted copies of the approval or final denial letter for each such selected claim. *First Unum provided the required information, and plaintiff has selected claims. First Unum is now in the process of gathering the claim determination letters. There is a dispute whether plaintiff must keep the claim determination letters confidential when produced.*

2.   First Unum was ordered to produce samples of any computer screens that Gayle Stoddard or Thomas Diebold had access to when they made their decisions on plaintiff's claim (January 8, 2004 and July 27, 2004, respectively), if the screen contained either plaintiff's monthly benefit and/or the reserve set for plaintiff's claim. *Neither Ms. Stoddard nor Mr. Diebold had access to any computer screen containing a reserve. One screen containing plaintiff's monthly benefit is in the claim file, and First Unum has identified it to plaintiff. First Unum is obtaining a sample of one other screen that contained a field for the monthly benefit and will produce it.*



3. First Unum was ordered to produce for *in camera* review copies of certain performance evaluations (and any employee responses) of Ms. Stoddard and Mr. Diebold, and to provide the Court (with a copy to plaintiff's counsel) an explanation of any abbreviations or acronyms in the documents. *First Unum has gathered performance reviews and compiled a list of abbreviations and acronyms. There is a dispute regarding which performance reviews are to be submitted, what the Court will analyze them for, and whether plaintiff must keep them confidential if the Court orders production.*

4. First Unum was ordered to produce documents describing any bonus, profit sharing or incentive plan that Ms. Stoddard or Mr. Diebold was eligible for at certain times. If any of these documents are not public documents, they shall be subject to an appropriate protective order. *First Unum has gathered responsive, non-public documents, and is awaiting entry of a protective order. The parties have agreed on the terms of an order, but have a dispute as to what other documents will be covered by the order.*

**Dates of Performance Reviews and Compensation Programs**

According to my notes from the June 11 conference, the Court ordered production of these documents only for the times when Stoddard and Diebold made their determinations on plaintiff's claim. Because both made their determinations in 2004, it is my understanding that First Unum is required to provide documents only for 2004. Counsel for plaintiff contends he is entitled to production for 2003, 2004 and 2005, for both Stoddard and Diebold.

Plaintiff sought this discovery expressly to explore the weight the Court should give to First Unum's conflict of interest under *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343 (2008). Accordingly, there is no basis for production of either performance reviews or compensation programs for 2005, because whatever transpired after the determination was made cannot have any effect on the Court's evaluation of that determination.

Nor do we believe there is a basis for production for the year prior to the determination. Rather, the Court, mindful of the limits on discovery in ERISA claim review cases, expressly limited disclosure to the period that the determinations on review in this case were made.

Accordingly, I ask the Court to confirm that these documents should be produced (with the performance reviews being produced *in camera*) for 2004 only.

**Scope of *In Camera* Review**

According to my notes from the conference, the Court explained that it would order production of a particular review only if it found something in it suggesting that Stoddard or Diebold was influenced by a conflict of interest. Plaintiff's attorney advised me that, in his view, the Court held it would order production if there was something "relevant" in it. The Court ordered *in camera* review of these materials because of the possibility that they might reveal a conflict; thus, the only way there could be something "relevant" in a review is if it did, in fact, reveal a conflict.


**Begos Horgan & Brown LLP**
Attorneys At Law

Hon. Debra Freeman
July 22, 2009
Page 3

**Confidentiality**

The Court ordered (*sua sponte*, I believe) that non-public documents describing First Unum's incentive programs would be produced pursuant to a protective order. First Unum prepared a proposed order, and incorporated plaintiff's comments. The parties have agreed on the terms of protection (*i.e.*, ¶¶ 2-9), but there is a dispute as to whether the order should also apply to the decision letters of other claimants and to any performance reviews that the Court orders to be produced (¶ 1(b) and 1(c)). I enclose a copy of the proposed order, which includes the language plaintiff has disputed.

As a general matter, there can be no dispute that plaintiff is only entitled to discovery to seek evidence that is potentially usable *in this action*: "In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353, 98 S.Ct. 2380, 2390 (1978).

Letters approving or denying disability claims made by non-party, unrelated claimants are certainly confidential. Those claimants have not waived their right to confidentiality by participating in this litigation.

These letters almost certainly contain "nonpublic personal health information," and possibly "nonpublic personal financial information," which are protected from disclosure. Title V of the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, *et. seq.*, requires financial institutions, including insurers, to protect the privacy of consumers and customers, and it requires state insurance authorities establish appropriate consumer privacy standards for insurance providers. The New York State Insurance Department has enacted Regulations 169 and 173 to implement the Act. 11 N.Y.C.R.R. §§ 420.0-420.24 and 421.0-421.10.

Regulation 169 prohibits First Unum from disclosing nonpublic personal financial information unless it has provided notice to those claimants and given them an opportunity to opt out of the disclosure. 11 N.Y.C.R.R. § 420.8. Nonpublic personal health information is subject to even greater protection; First Unum cannot disclose it without the express consent of the claimant or proof that a specific exemption is applicable. 11 N.Y.C.R.R.§§ 420.17.

Regulation 173 imposes "standards for developing and implementing administrative, technical, and physical safeguards to protect the security, confidentiality, and integrity of customer information[.]" 11 N.Y.C.R.R. § 421.0(a). Among other things, insurers are required to "implement a comprehensive written information security program that includes administrative, technical and physical safeguards for the protection of customer information. The administrative, technical, and physical safeguards included in the information security program shall be appropriate to the size and complexity of the licensee and the nature and scope of its activities." 11 N.Y.C.R.R. § 421.2.



**Begos Horgan & Brown LLP**
Attorneys At Law

Hon. Debra Freeman
July 22, 2009
Page 4

Given that First Unum would be precluded from providing these claim letters to plaintiff except for the Court's order that it do so, its is entirely reasonable to require plaintiff and her attorney to comply with Regulations 169 and 173.

To be sure, First Unum will be using its best efforts to redact nonpublic personal information from the letters before producing them to plaintiff. Nevertheless, it is possible that plaintiff (or some other person to whom plaintiff might wish to provide the documents) could identify one or more of those claimants. Only by requiring plaintiff to keep these documents confidential, and allowing plaintiff to use them only for this litigation, can First Unum, the Court (and those other claimants) have reasonable assurance that nonpublic information is kept nonpublic.

Aside from the statutes and regulations, it would be entirely improper, and unseemly, for plaintiff or her attorney to attempt to make use of these claim determinations for matters unrelated to this litigation. Plaintiff's attorney should not, for example, be permitted to share these documents with other attorneys in the plaintiff's bar, or post them on the internet. Plaintiff is free to publicize the facts and circumstances of her own claim; she should not be permitted to do the same with claims of unrelated people. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32, 104 S.Ct. 2199, 2207 (1984) ("A litigant has no First Amendment right of access to information made available only for purposes of trying his suit").

As for the performance reviews, the Court has recognized the highly confidential nature of these documents, by ordering an *in camera* review to ascertain whether there is discoverable information in them. Though we are confident the Court will not find any reason to order production of any of these reviews, the reviews do not lose their confidential nature if the Court orders them to be produced to plaintiff. Neither Stoddard nor Diebold are parties to this litigation, and they have not waived their right to privacy. As with the letters deciding other claims, plaintiff has no legitimate use for these documents outside of this action.

**Plaintiff's Time to Respond**

Scott Riemer and I have had several discussions attempting to resolve these disputes. After it became apparent that we could not resolve them, I advised Mr. Riemer that I would be writing to the Court. He told me that he would be out of the country until July 26. Mr. Riemer believed he would be able to submit a response to my letter by July 31, 2009.

Having reviewed the within submission and Plaintiff's response, the parties' disputes are resolved as follows:
(1) Performance reviews for 2003, 2004 and 2005 shall be submitted for in camera review;
(2) The court will review the documents for any evidence of conflict;
(3) The court has separately approved the proposed confidentiality order, with one modification, as marked.

Respectfully submitted,

/s/ Patrick W. Begos
Patrick W. Begos

PWB:mtf
Enclosure

cc: Scott M. Riemer, Esq. (by email)

SO ORDERED: DATE: 8/7/09

/s/ Debra Freeman
**DEBRA FREEMAN**
UNITED STATES MAGISTRATE JUDGE