RIEMER & ASSOCIATES LLC
Attorneys for Plaintiff
60 East 42nd Street, Suite 1750
New York, New York 10165
(212) 297-0700
pkampfer@riemerlawfirm.com


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DAVID ROBERT AITKEN,                                    16 CV 4606 (PGG)(JCF)

                        Plaintiff,

            -against-                                                ECF Case

AETNA LIFE INSURANCE COMPANY,

                        Defendant.
------------------------------------------------------------------X




**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF SUMMARY JUDGMENT**

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .......................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 2

ARGUMENT .................................................................................................................... 6

I.   THE APPROPRIATE STANDARD OF REVIEW IS *DE NOVO* ................................. 6

II.  SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF
     AITKEN UNDER THE *DE NOVO* STANDARD OF REVIEW ............................... 10

     A.  THERE IS NO ISSUE OF FACT THAT AITKEN'S CARDIAC
         SYMPTOMS PREVENT HIM FROM PERFORMING THE
         MATERIAL DUTIES OF HIS OWN OCCUPATION ..................................... 11

     B.  AETNA DOES NOT DISPUTE AITKEN'S INABILITY TO
         HANDLE STRESSFUL SITATIONS AND ENVIRONMENTS ..................... 15

     C.  AITKEN'S POST-DISABILITY EARNINGS ARE LESS THAN
         80% OF HIS ADJUSTED PRE-DISABILITY EARNINGS ............................ 15

III. AETNA'S EVIDENCE IS INSUFFICIENT TO CREATE A QUESTIONS
     OF FACT .................................................................................................... 16

     A.  DR. VENEZIANO'S OPINIONS HAVE NO EVIDENTIARY VALUE ...... 16

     B.  MS. CLIFTON'S OPINIONS HAVE NO EVIDENTIARY VALUE ............. 17

IV.  EVEN IF, *ARGUENDO*, THE STANDARD OF REVIEW WERE
     ARBITRARY AND CAPRICIOUS, AETNA'S DETERMINATION
     SHOULD BE REVERSED ............................................................................ 21

     A.  AETNA'S DETERMINATION WAS NOT REASONABLE ........................... 22

         1.  Aetna Unreasonably Failed To Consider The Impact Of
             Stress/Pressure On Aitken's Ability To Perform The Material
             Duties Of His Own Occupation ................................................. 22

         2.  Aetna Unreasonably Misclassified Aitken's Own Occupation ............... 23

      B.   AETNA DEPRIVED AITKEN OF A FULL AND FAIR REVIEW ............... 24

CONCLUSION ............................................................................................................................ 25

TABLE OF AUTHORITIES

<u>Cases</u>

*Barbu v. Life Ins. Co. of North Am.*, 35 F.Supp.3d 274 (E.D.N.Y. 2014)...............................................14

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) ................................................24

*Conkright v. Frommert*, 130 S.Ct. 1640 (2010)..........................................................21

*Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127 (2d Cir. 2001) ..........................................14

*Crocco v. Xerox Corp.*, 137 f.2d 105 (2d Cir. 1998) .................................................24

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) ..................................................6, 21

*Hafford v. Aetna Life Ins. Co.*, 2017 U.S. Dist. LEXIS 91763 (S.D.N.Y. June 13, 2017) .......... 8-9, 10

*Halo v. Yale Health Plan*, 819 F.3d 42 (2d Cir. 2016)...........................................1, 6, 7, 10

*Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75 (2d Cir 2009) .......................................6

*Kinstler v. First Reliance Std. Life Ins. Co.*, 181 f.3d 243 (2d Cir. 1999)...................................6

*Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343 (2008)......................................21

*McCauley v. First UNUM Life Ins. Co.*, 551 F.3d 126 (2d Cir. 2008) ...............................21, 22

*Neely v. Pension Trust Fund*, 2004 U.S. Dist LEXIS 27777 (E.D.N.Y. 2004) ......................21

*Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 439 (2d Cir. 2006) ........................10, 14

*Salisbury v. Prudential Ins. Co. of Am.*, 2017 U.S. Dist. LEXIS 27983 (S.D.N.Y. 2017)................ 9-10

*Schuman v. Aetna Life Ins. Co.*, 2017 U.S. Dist. LEXIS 39388 (D. Conn. March 20, 2017).........8, 25

*Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226 (2d Cir. 1995)..................................................6

<u>Statutes/Regulations</u>

29 C.F.R. §2560.503-1 ................................................................................ 1, 6, 7, 10

29 C.F.R. §2560.503-1(h)(2)(iv) ............................................................... 1, 7, 8, 24

29 C.F.R. §2560.503-1(h)(4) ..................................................................... 1, 7, 8, 24

29 C.F.R. §2560.503-1(i)(1)(i) ................................................................... 1, 7, 8

29 C.F.R. §2560.503-1(i)(3)(i) ................................................................... 1, 7, 8

*ERISA Rules and Regulations for Administration and Enforcement; Claims Procedure*,
65 Fed. Reg. 70246, 70250 (Nov. 21, 2000) ......................................... 9

<u>Websites</u>

www.certification matters.org ................................................................. 14

http://www.occupationalinfo.org/ .......................................................19, 20

## PRELIMINARY STATEMENT

Summary Judgment should be granted in favor of Aitken because there is no issue of fact that he is disabled under the terms of the Policy.  Although the Policy contains a grant of discretion, *de novo* review is appropriate because Aetna failed to comply with the ERISA claims-procedure regulations at 29 C.F.R. §2560.503-1.  *See Halo v. Yale Health Plan*, 819 F.3d 42 (2d Cir. 2016) (failure to comply with the Regulations requires *de novo* review).  Specifically, Aetna failed to review all of the documents submitted with Aitken's appeal in violation of 29 C.F.R. §2560.503-1(h)(2)(iv) and (h)(4); and failed to render a decision within 45-days of its receipt of Aitken's appeal in violation of 29 C.F.R. §2560.503-1(i)(1)(i) and (i)(3)(i).  These claims violations denied Aitken a full and fair review, resulting in the wrongful denial of his claim.

Under *de novo* review, the preponderance of the evidence proves that Aitken is disabled from performing the duties of his own occupation as Group Chief Financial Officer ("Group CFO").  Both Aitken's treating cardiologist and cardiothoracic surgeon consistently stated that he cannot handle: stressful situations, extensive travel and a heavy work schedule – all requirements of a Group CFO position in the general economy.  Furthermore, Aetna conceded that Aitken must avoid stressful work environments.  Therefore, there is no issue of fact, and it is more likely than not that Aitken is disabled and entitled to LTD benefits.  <u>*Relief Requested Under De Novo Review*</u>:  Summary judgment, with an award of benefits to Aitken.  Should the Court determine that summary judgment is inappropriate, Aitken requests a bench trial to resolve any issues of disputed material fact.

Even if, *arguendo*, a *de novo* review was inapplicable, Aetna's termination of benefits was arbitrary and capricious.  First, Aetna's denial was not reasonable because it failed to consider the impact of stress/pressure on Aitken's ability to perform his own occupation; and unreasonably misclassified Aitken's own occupation.  Second, Aetna deprived Aitken of a full and fair review by failing to consider all of the medical and vocational evidence submitted with Aitken's appeal – namely, the

1

vocational assessment from Aitken's vocational expert.   *Relief Requested Under Deferential Review*:
Summary judgment with an award of benefits, if the Court agrees that the existing record supports
total disability.  A remand to Aetna for further consideration, if the Court believes it to be necessary.

## STATEMENT OF FACTS[1]

Aitken was a senior executive officer whose 30+ year career was cut short by the debilitating
symptoms of his Coronary Artery Disease.  (713-714, 976, 984).[2]  Aitken began working in corporate
finance roles in 1984 after obtaining his professional qualifications.  (713).  Over the next 25+ years
he worked for 5-6 different organizations performing various finance related jobs, and eventually
attained his dream job as Chief Financial Officer in or about 2001.  (713-714).

Immediately prior to his disability, Aitken worked as the Group CFO at Four Seasons Solar
Products LLC ("Four Seasons") earning $180,000 per year.  (714, 949, 969, 978).  His occupation was
extremely stressful and required long hours and a significant amount of travel both within the United
States and internationally.  (672, 683, 714-715, 949, 950, 975, 978).  It required, without limitation:
managing the financial functions of the companies and Retail Operations; overseeing the day to day
strategic and commercial management of a budget in excess of $100 Million in revenues for the Home
Improvement Group; overseeing the financial management of Retail Operations of $17 Million in
revenues; meeting strict reporting deadlines; supervising 5+ direct reports and a department of over
20 people; and giving presentations/attending multiple board meetings each month.  (672, 678, 683,
714, 975, 978).  Aitken genuinely loved his job and thrived in this role.  (713-714).

Unfortunately, Aitken's career as Group CFO came to a screeching halt despite his significant

---

[1] We respectfully refer the Court to Aitken's Rule 56.1 Statement of Material Facts for a more detailed
recitation of the relevant facts of this case.

[2] Page references are to the Administrative Record (Bates stamped Aitken 0001 – 1328) being filed as
an exhibit to Aetna's cross-motion for summary judgment.  Exhibit A is attached to the Affirmation
of Paul M. Kampfer, submitted herewith.

drive and career ambition.  Aitken's cardiac symptoms began at the end of May 2012, when he woke up in the middle of the night with severe discomfort and pressure in his chest.  (715).  Following an angiogram, he underwent emergency triple bypass surgery on June 1, 2012, which revealed a blockage of 80% or more in 4 arteries.  (663, 715, 830).  Following the surgery, Aitken's recovery was going well, and he returned to work on a part-time basis in August 2012 – only 6 weeks after his major surgery.  (715).  Unfortunately, during cardiac rehabilitation on or about August 28, 2012, nurses noticed abnormalities on Aitken's heart monitor.  (716).  He immediately was taken by ambulance to the hospital where an angiogram revealed that all of the prior grafts had either failed or were in the process of failing.  (716).  As a result, Aitken underwent a second emergency bypass surgery on or about August 28, 2012, only 12 weeks after his first surgery.  (716, 915).  Undeterred and intent on continuing the career he worked so hard to achieve, Aitken again returned to work part-time 6 weeks after the second surgery, and was working full time and performing all his job duties by the end of December 2013.  (716).  However, at that time, he was still experiencing symptoms of reduced endurance and stamina, fatigue, headaches and more frequent bouts of chest pain.  (716-717).

In February 2014, after experiencing severe angina similar to that which he experienced in May 2012, Aitken's treating cardiologist, Cornell Cohen, M.D. directed him to go to the Emergency Room. (717).  A third angiogram performed on February 10, 2014 revealed a blockage in the left anterior descending artery, resulting in the insertion of a drug eluding coronary artery stent.  (717, 915).  After a brief recovery period, Aitken – determined to preserve his career – again returned to work.  But, the stress of his job, frequent travel and long hours caused a progressive worsening of his symptoms. (717).  In addition to his worsening fatigue, lack of endurance/stamina, and chest pain, Aitken also experienced nausea, sweating, and atrial fibrillation, all of which began interfering with his ability to perform the duties of his occupation.  (717-718).  In a letter dated January 6, 2015, Aitken's boss and CEO, Shaun Kennedy explained that after February 2014, Aitken was having trouble maintaining his

3

day to day focus, meeting strict deadlines and keeping up with his job responsibilities.  (978).  Mr. Kennedy noted that Aitken needed rest breaks during the day; that "he fatigues quickly; often becoming nauseous and even physically ill while at the office; that he occasionally loses color in his face and turns white;" and that he occasionally experienced such severe chest pains and angina that he was incapable of driving home.  (978).

Due to his inability to deal with stress and pressure-filled situations; meet strict deadlines; and travel extensively across time zones, Dr. Cohen suggested partial disability, and recommended that Aitken "seek reassignment or different employment to prevent further cardiovascular illness and disability."  (662).  Taking his doctor's advice, Aitken finally succumbed to his disability and stopped working as Group CFO on or about November 7, 2014.  (719).  However, Aitken was determined to continue working in the field that he loves, but in a lesser capacity.  (719).  Immediately thereafter, Aitken transitioned to a far less stressful and less demanding position within Four Seasons – that of Director of Acquisitions.  (719, 969, 978-979, 980, 981).  This job was not only significantly less stressful and demanding, but also required only very limited travel within the United States. (979-980).

In his new job, Aitken was mainly responsible for preparing, conducting and consolidating market research on potential business segments; preparing financial and commercial assessments of potential business opportunities; performing due diligence on acquisitions; and performing financial related duties for the Group CFO and/or principle shareholder.  (981).  At the time Aitken began working as Director of Acquisitions, his salary was reduced to $100,000 per year, and was further reduced to $60,000 per year as of March 30, 2015.  (765, 775, 969, 979).  Aitken continued working for Four Seasons through May 2015, when he moved to Virginia, and accepted an accounting position for an independently owned and operated Four Season's franchise as of June 1, 2015.  (670, 719-720).

Given his severe symptoms and inability to work as a Group CFO, Aitken timely applied for partial disability benefits.  (963-981).  Pursuant to the Policy, Aitken was required to prove that he is

unable to perform the "material duties" of your "own occupation" and that his earnings be 80% or less than his "adjusted predisability earnings." (1025). As such, the Policy allows Aitken to receive LTD benefits even while working so long as he is unable to perform the material duties of his own occupation and has the requisite 20% loss in income. (1025). The Policy contains a section titled "Adjustments to Your Benefits If You Work While Disabled," which explains how Aitken's LTD benefits are to be calculated. (1025).

Aitken meets the above definition of disability. The medical evidence in the administrative record reveals that Aitken has continuously suffered from cardiac symptoms including, without limitation: chest pain, angina, palpitations, fatigue, shortness of breath and nausea, (796, 798, 920, 921, 961, 985). As a result of these symptoms, throughout his entire claim, Dr. Cohen and Aitken's treating cardiothoracic surgeon, Sandeep Gupta, M.D. consistently stated that Aitken is unable to handle high stress/pressure environments; travel extensively; and maintain a heavy work schedule. (613, 662, 663, 960, 984-985). In fact, Dr. Cohen indicated that among other things, that Aitken's inability to handle stressful situations is the main cause of his disability (612-613).

From a vocational perspective, Aitken's vocational expert, Charles Kincaid, Ph.D., CRC, CVE, ATP, CLCP confirmed that, as performed in the general economy, Aitken's occupation as Group CFO required high stress, long hours and extensive travel. (683, 672). Dr. Kincaid concluded that "it is within a reasonable degree of vocational certainly that Mr. Aitken is unemployable in his past work as Group Chief Financial Officer or similar stress-producing occupations due to his medical restrictions. He has been able to obtain replacement employment as an Accountant in a position that is consistent with the medical restrictions." (692).

Despite the overwhelming evidence of disability, Aetna denied Plaintiff's claim and appeal. (248-250, 262-264). Although Aetna and its file review doctor acknowledged that Aitken suffers from "significant coronary artery disease and likely has microvascular involvement" leading to angina

symptoms and that he cannot handle undue stress, Aetna arbitrarily ignored the high stress levels associated with Aitken's occupation as Group CFO. (249, 262-264, 460-461, 487-489, 607-610, 632-634). Aetna also unreasonably mischaracterized the nature of Aitken's own occupation and post-disability job, which directly led to the denial of his LTD claim. (249, 263-264, 460-461, 487-489).

Given Aetna's denial of his LTD benefits, Aitken commenced the instant action on June 17, 2016. (ECF DOC 1). The parties now make the instant cross-motions for summary judgment.

## ARGUMENT

### I.     THE APPROPRIATE STANDARD OF REVIEW IS *DE NOVO*

The denial of Aitken's LTD benefits should be reviewed under the *de novo* standard of review. A benefit determination is reviewed *de novo*, unless the plan vests the administrator with discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If discretion is properly conferred to the administrator, the Court "will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir 2009). The administrator "bears the burden of proving that the arbitrary and capricious standard of review applies, since 'the party claiming deferential review should prove the predicate that justifies it.'" *Kinstler v. First Reliance Std. Life Ins. Co.*, 181 f.3d 243 (2d Cir. 1999), citing to *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir. 1995).

However, even where there is a valid grant of discretion, that does not guarantee the administrator a deferential review. In *Halo v. Yale Health Plan*, 819 F.3d 42 (2d Cir. 2016), the Second Circuit found that "when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulations, 29 C.F.R. §2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in conforming with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless." *Id.* at 45. The Court also found that

the plan has the burden to demonstrate compliance with the claims procedure regulations, and that "substantial compliance" with the regulations is <u>not</u> sufficient to trigger an arbitrary and capricious review. *Id.* at 56, 58. Rather, a plan administrator must "strictly adhere to the regulation." *Id.* at 56.

Here, Aetna cannot satisfy its burden. Although the Policy contains a grant of discretion, Aetna's violations of the ERISA claims-procedure regulations lead to a *de novo* review under *Halo*. *De novo* review is required under *Halo* because Aetna failed to comply with ERISA's procedural requirements set forth in 29 C.F.R. §2560.503-1, and its lack of compliance was neither inadvertent nor harmless. *See Halo*, 819 F.3d at 45. Specifically, Aetna failed to: (1) review all of the documents submitted with Aitken's appeal in violation of 29 C.F.R. §2560.503-1(h)(2)(iv) and (h)(4); and (2) render a decision within 45-days in violation of 29 C.F.R. §2560.503-1(i)(3)(i) and (i)(1)(i).

<u>First</u>, Aetna did not comply with ERISA's claims procedure regulations by failing to consider all documents submitted with Mr. Aitken's appeal. Pursuant to 29 C.F.R. §2560.503-1(h)(2)(iv) and (h)(4), to provide a full and fair review, Aetna must "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." Here, among other things, Aetna failed to consider Dr. Kincaid's vocational assessment. There is absolutely no evidence in the administrative record proving that Aetna's appeal representative or vocational consultant considered Dr. Kincaid's report.[3] (262-264, 520-522, 541-544, Exhibit A). This violation of the claims procedure regulations was neither inadvertent nor harmless, and is sufficient to trigger a *de novo* review under *Halo*.

The fact that Dr. Kincaid's vocational assessment may have been reviewed by peer review

---

[3] The only evidence from the claim file reviewed by Aetna's vocational consultant following the submission of Aitken's appeal was Image No. 16743123, which corresponds to pages 972-985 of the Administrative Record consisting of Aitken's LTD application, Employer Statement, Job Description and 2014 office visit note and attending physician statement from Dr. Gupta. (520-521, Exhibit A).

physician, Marc Veneziano, M.D., is of no consequence.  A very similar situation arose in *Schuman v. Aetna Life Ins. Co.*, 2017 U.S. Dist. LEXIS 39388 *39-41 (D. Conn. March 20, 2017).  In *Schuman*, a vocational report submitted on appeal was only considered by the file review doctor.  *Id.*  The Court noted that the peer reviewer is a doctor whose review was intended to evaluate the medical evidence – not the vocational evidence.  The Court stated, "it would be wholly unreasonable for the appellate reviewer to rely on [the peer review physician's] assessment of the [vocational report] in order to determine whether its critique of the initial vocational assessment was valid." *Id.* at 40.  The same reasoning applies in this case.  For these reasons, Aetna cannot meet its burden of proving that it complied with the §2560.503-1(h)(2)(iv) and (h)(4) of the ERISA claims procedure regulations.

Second, Aetna did not comply with ERISA's claim procedure regulations by failing to render a decision within 45-days after its receipt of Aitken's appeal.  According to 29 C.F.R. §2560.503-1(i)(1)(i) and (i)(3)(i), the administrator must render a decision within 45-days of its receipt of Plaintiff's appeal.  While the administrator may request one 45-day extension, they may do so only if "the plan administrator determines that special circumstances (such as the need to hold a hearing, if the plan's procedures provide for a hearing) require an extension of time for processing the claim." 29 C.F.R. §2560.503-1(i)(1)(i) and (i)(3)(i).  If "special circumstances" exist, the administrator must provide written notice prior to the expiration of the initial 45 day period, and must "indicate the special circumstances requiring an extension." *Id.*

"In addressing the question of what constitutes "special circumstances," the final rule promulgating the regulations states that "the time periods for decision making are generally maximum periods, not automatic entitlements," that "[i]f a specific claim presents no difficulty whatsoever, it may be unreasonable to delay in deciding that claim until the end of the maximum period," and that "an extension may be imposed only for reasons beyond the control of the plan." *Hafford v. Aetna Life Ins. Co.*, 2017 U.S. Dist. LEXIS 91763 (S.D.N.Y. June 13, 2017) (Report and Recommendation), citing

8

to *ERISA Rules and Regulations for Administration and Enforcement; Claims Procedure*, 65 Fed. Reg. 70246, 70250 (Nov. 21, 2000). The Department of Labor concluded that an administrator's failure to provide a sufficient "special circumstance" constitutes a violation of the claims procedure regulation. *See* 65 Fed. Reg. 70248 n.8.

In this case, Aetna acknowledged that it received Aitken's appeal on November 5, 2015. (253). As such the maximum 45-day period expired on December 20, 2015. Via letter dated December 18, 2015, Aetna advised that although they received Aitken's appeal on November 5, 2015, "we need more time [to make a decision] because we are in the process of referring your client's claim file for a specialty matched medical opinion. Because of this reason we'll need a forty-five (45) day extension to complete the appeal review…" (259). Notably, Aetna did not refer Aitken's claim for a physician file review until January 7, 2016 – well after the 45-day deadline to render a decision expired. (523-524, 629, 1076). In fact, Aetna took very little action at all in the 45-days following its receipt of Aitken's appeal. (506-522). Although Aetna's letter was sent during the initial 45-day period, its excuse does not constitute a "special circumstance" permitting the extension.

Under a similar set of facts, the court in *Salisbury v. Prudential Ins. Co. of Am.*, 2017 U.S. Dist. LEXIS 27983 (S.D.N.Y. Feb. 28, 2017) found that requesting additional time in order to conduct a medical and vocational review does not equate to a "special circumstance." The court stated:

> The only rationale for the extension provided in the company's written notice was that Prudential needed additional time "to allow for review of the information in Ms. Salisbury's file which remains under physician and vocational review." … But virtually every appeal of the denial of a disability benefits claim will require "physician and vocational review," and thus this cannot constitute a valid "special circumstance." Additionally, the written notice of extension did not identify any unusual difficulties associated with Salisbury's claim. *See* 65 Fed. Reg. at 70,250 (noting that it would be unreasonable to seek an extension if the claim "present[ed] no difficulty whatsoever"). To find that Prudential's justification for seeking an extension in this case constituted a "special circumstance" would mean that virtually any request for an extension would be permissible, an outcome the Department of Labor has expressly rejected. *See id.* ("[T]he time periods for decisionmaking are generally maximum periods, not automatic entitlements.").

9

*Salisbury*, 2017 U.S. Dist. LEXIS 27983 at 12.  *See also*, *Hafford*, 2017 U.S. Dist. LEXIS 91763 at 29-33.

The court in *Salisbury* went on to explain that the limited exceptions laid out in *Halo* (*e.g.*, if the administrator can show that its failure to comply with the regulations was inadvertent and harmless) do not apply.  *Id.* at 13-16.  The court further stated, "While the violation of 29 C.F.R. §2560.503-1 discussed herein may have been harmless given that Prudential ultimately rendered a decision on Salisbury's appeal within the maximum allowable 90-days, the Court cannot say that Prudential's violation was "inadvertent."  Prudential purposely sought the extension and provided the inadequate grounds for seeking an extension."  *Id.* at 15.  The court concluded that since *Halo* requires strict compliance with the claims-procedure regulations, Prudential's violation of the same triggers a *de novo* review.  *Id.* at 15-16.  *See also*, *Hafford*, 2017 U.S. Dist. LEXIS 91763 at 32-33 (noting that while Aetna's non-compliance with the regulations may have been harmless, a plaintiff need not show that he was prejudiced for a plan administrator to lose the benefit of an arbitrary and capricious review.).

Thus, since Aetna did not provide sufficient justification for an extension of the 45-day deadline, and since it failed to strictly adhere to the ERISA claims procedure regulations, the Court should review this case under the *de novo* standard as per the Second Circuit's decision in *Halo*.[4]

## II.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF AITKEN UNDER THE *DE NOVO* STANDARD OF REVIEW

A Plaintiff under *de novo* standard of review must establish the elements of his or her case by a preponderance of the evidence.  *See Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 439, 441 (2d Cir. 2006).  Here, summary judgment should be granted in favor of Aitken because a preponderance of the evidence establishes that he is partially disabled and unable to perform the material duties of his own occupation.  Specifically, the evidence shows that: (A) Aitken's symptoms prevent him from

---

[4] Aetna's failure to comply with the ERISA claims procedure regulations is a recurring theme given that it was the defendant in both the *Schuman* and *Hafford* cases discussed above.

performing the material duties of a Group CFO (his own occupation); (B) Aetna does not dispute Aitken's inability to handle stressful environments; and (C) Aitken's post-disability earnings are less than 80% of his adjusted predisability earnings.

### A. THERE IS NO ISSUE OF FACT THAT AITKEN'S CARDIAC SYMPTOMS PREVENT HIM FROM PERFORMING THE MATERIAL DUTIES OF HIS OWN OCCUPATION

In order to prove his entitlement to LTD benefits, Aitken must show that he is unable to perform the material duties of his own occupation and that his earnings are 80% or less than his adjusted predisability earnings.  (1025).  The LTD certificate defines "Own Occupation" as the occupation – as performed in the national economy – that Aitken was performing at the time his disability began.  (1041).  In this case, prior to his disability, Aitken worked as a Group CFO for Four Seasons, an international company.  (969, 978, 714).

Without limitation, Aitken's occupation required: managing the financial functions of the companies and Retail Operations; overseeing the day to day strategic and commercial management of a budget in excess of $100 Million in revenues for the Home Improvement Group; overseeing the financial management of Retail Operations of $17 Million in revenues; meeting strict reporting deadlines; supervising 5 plus direct reports and a department of over 20 people; and attending multiple board meetings each month.  (672, 678, 683, 714, 975, 978).  His occupation was extremely stressful and required a significant amount of travel both within the United States and internationally.  (672, 683, 714-715, 949, 950, 975, 978).  In fact, Aitken's vocational expert, Dr. Kincaid confirmed that high stress levels, extensive travel, and the other duties listed above "are representative of CFO positions in the U.S. labor market."  (672, 683, 684).

In this case, there is no issue of fact.  A preponderance of the medical and vocational evidence shows that Aitken is incapable of performing the material duties of a Group CFO because he cannot handle: stressful and pressure filled environments; extensive travel; and a heavy work schedule.

11

*Aitken's Medical Evidence*

The medical documentation from Aitken's treating physicians, Drs. Cohen and Gupta, unequivocally support his disability.  Without limitation, they consistently explained the following:

- Rebuttal Report from Dr. Cohen dated February 3, 2016: Dr. Cohen stated that while Aitken can work in a lower stress job, "he cannot handle stressful or pressure filled situations as these cause a significant increase in symptoms, which could result in further cardiac events."  He noted that the inability deal with stress/pressure is the main cause of his disability, and that "[w]hen he was working as Group CFO, his symptoms were significantly worse, which I attribute largely to the stress of the job.  His current job in accounting is not nearly as stressful, and his symptoms have improved to an extent." (613).

  Dr. Cohen also explained that Aitken cannot handle a heavy workload, and must avoid extensive airplane travel as "[h]is symptoms are made worse by travelling between multiple time zones, and then working after such flights without a sufficient recovery/rest period.  Therefore, he cannot be required to travel and then return to work right away.  He needs some recovery time – which, according to Mr. Aitken, was not possible while working as Group CFO." (613).

- Narrative Report from Dr. Cohen dated November 3, 2015: Dr. Cohen reported that Aitken has undergone two separate open heart surgeries, coronary stents and continued treatment for irregular heart rhythm. (662).  The doctor stated, "As a result, his endurance has diminished.  He is no longer able to continue his extensive travel schedule related to work.  I have advised him against frequent airplane travel, a heavy work schedule, and working a high pressure environment.  For his long-term cardiovascular health, it is essential that he decrease his stress level, workload, and travel schedule.  I have therefore asked him to seek reassignment or different employment to prevent further cardiovascular illness and disability.  I am recommending partial disability for this reason." (662).

- Narrative Report from Dr. Gupta dated October 7, 2015: Dr. Gupta stated that he performed triple bypass surgeries on June 1, 2012 and August 28, 2012, and placed a drug eluting stent on February 20, 2014. (663).  Dr. Gupta stated "I have seen Mr. Aitken on October 6, 2015.  Due to his recent cardiac health I advised him not to do extensive air travel or maintain a high stress job." (663).

- Attending Physician Statement ("APS") from Dr. Cohen dated January 23, 2015: Dr. Cohen indicated that Aitken suffers from Paroxysmal Atrial Fibrillation and Coronary Artery Disease. (960).  The doctor noted that Aitken's restrictions/limitations consist of: no heavy strenuous activity, no lifting heavy objects greater than 20 pounds, no pushing greater than 10 pounds, no reaching over head, no undue stress and limited travel. (961).  Dr. Cohen further stated: "undue stress has affected his medical condition." (961).

12

- <u>APS from Dr. Gupta dated December 23, 2014</u>: Dr. Gupta indicated that Aitken suffers from Coronary Artery Disease, and that Aitken's restrictions/limitations consist of: working 4 days a week to build up endurance, a low stress job and little travel. (984-985).

*<u>Aitken's Vocational Evidence</u>*

The vocational evidence from Aitken's boss/Chief Executive Officer of Four Seasons, Shaun Kennedy and vocational expert, Dr. Kincaid prove that given his symptoms, restrictions and limitation, Aitken cannot perform the material duties of a Group CFO. Without limitation, they explained the following:

- <u>Letter from Shaun Kennedy dated January 6, 2015</u>: Mr. Kennedy, who worked very closely with Aitken and was well aware of his cardiac history, stated that since around February 2014, "I have noticed a slow but noticeable decline in his work abilities. Mr. Aitken has had difficulty maintaining a disciplined day to day focus, meeting strict deadlines and generally keeping up with his job duties and responsibilities. There have been times when Mr. Aitken had to stop and rest in the middle of performing his role because he was simply too tired to continue. When he is under significant stress, something that happens frequently in his role, his symptoms noticeably increase. For example, he fatigues quickly; often become[s] nauseous and even physically ill while at the office; and he occasionally loses color in his face and turns white – something that is particularly disturbing and scary. There were other times when Mr. Aitken had chest pains and angina that were so severe he was physically incapable of driving home. Having seen the consequences first hand I've been unable to ask him to travel to meetings and perform tasks that I would previously not have hesitated to allocate to him." (978).

- <u>Vocational Evaluation from Dr. Kincaid dated October 20, 2015</u>: Dr. Kincaid conducted an in-depth vocational analysis, which as discussed below, was ignored by Aetna. (664-705). Dr. Kincaid noted that Aitken's job was exceedingly stressful and required travel 1-2 weeks per month across time zones and internationally; giving audit presentations; doing performance reviews; working long hours; meeting deadlines; and supervising 5+ direct reports with the overall responsibility for more than 20 staff members in the finance department. (672, 678, 683). He noted that the "high stress level and duties of Aitken's former job position <u>are representative of CFO positions in the U.S. labor market</u>. (683).

  Dr. Kincaid indicated that work stress can have a substantial impact on an employee's ability to perform in high level positions. Citing to the World Health Organization, he stated, "…when pressure that becomes excessive or otherwise unmanageable it leads to stress. Stress can damage an employees' health and the business performance." (683). Dr. Kincaid also reported that according the University Of Rochester Medical Center, "Your body's response to stress is supposed to protect you. But, if it is constant, it can

13

harm you.  The hormone cortisol is released in response to stress.  Studies suggest that the high levels of cortisol from long-term stress can increase blood cholesterol, triglycerides, and blood pressure.  These are common risk factors for heart disease.  This stress can also cause changes that promote the buildup of plaque in the arteries."  (683).  He stated that Aitken is restricted from undue stress, and that his physicians "have dispensed recommendations that coincide with the research above."  (683).

Dr. Kincaid further explained that according to the Occupational Outlook Handbook, "Top executives frequently travel to attend meetings and conferences or to visit their company's local, regional, national, and international offices…Top executives often work long hours, including evenings and weekend."  (672).  In addition, he noted that pursuant to O*Net, "the following is listed for Chief Executives: 'Deliver speeches, write articles, or present information at meetings or conventions to promote services, exchange ideas, or accomplish objectives.'  Meetings and conventions often require traveling domestically and internationally across time zones, and Aitken confirmed that he was required to travel frequently for his work as a Group Chief Financial Officer.  Due to these issues, Aitken's ability to return to his past work is highly unlikely…"  (684).

Dr. Kincaid concluded that Aitken is unable to perform the material duties of his own occupation.  (692).  He stated, "Considering the functional limitations derived from the medical records reviewed …, it is within a reasonable degree of vocational certainty that Mr. Aitken is unemployable in his past work as Group Chief Financial Officer or similar stress-producing occupations due to his medical restrictions.  He has been able to obtain replacements employment as an Accountant in a position that is consistent with the medical restrictions."  (692).

While the Court is not required to give greater deference to the opinions of Aitken's treating doctors and experts, "it may give their opinions appropriate weight 'if it finds these opinions are reliable and probative.'"  *Paese*, 449 F.3d at 442.  Under a *de novo* review, the Court may consider "the length and nature of [the treating physician's] relationship, the level of the doctor's expertise, and the compatibility of the opinion with other evidence.  *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 135 (2d Cir. 2001).  *See also*, *Barbu v. Life Ins. Co. of North Am.*, 35 F.Supp.3d 274, 289 (E.D.N.Y. 2014).

Here, Drs. Cohen and Gupta have treated Aitken since 2012 (663, 960).  They are board certified in cardiovascular disease and thoracic and cardiac surgery, respectively.  *See* www.certification matters.org.  Moreover, as demonstrated above, the opinions of these 2 treating physicians are entirely consistent with one another.  Their opinions should, therefore, be given more weight than the

14

opinions of Aetna's file review doctor, which are inconsistent and not supported by the evidence in the record, as discussed below.

### B. AETNA DOES NOT DISPUTE AITKEN'S INABILITY TO HANDLE STRESSFUL SITATIONS AND ENVIRONMENTS

Aetna does not dispute that Aitken is unable to handle stressful situations and environments. In its initial denial letter dated May 12, 2015, Aetna's Senior Disability Risk Manager, Brian Flynn stated that "[t]he medical information review supports the restrictions and limitations stated by" Dr. Cohen in his APS. (249). Among the restrictions and limitations given by Dr. Cohen is "no undue stress." (961). Further, in his January 18, 2016 Report, external file review physician, Marc Veneziano, M.D. stated, "In my opinion, based on the available medical record[,] Dr. Cohen's restrictions and limitations as stated in his AP statement dated 1/23/2015, are mostly supported." (632). Notably, the only one of Dr. Cohen's restrictions and limitations to which Dr. Veneziano objected was Aitken's inability to tolerate extensive air travel. (632-633). Therefore, regardless of air travel, because the material duties of Aitken's occupation as Group CFO were inherently stressful and because Aetna conceded that Aitken cannot handle stress, Aitken has indisputably proved that he is disabled as defined by the LTD Plan.

### C. AITKEN'S POST-DISABILITY EARNINGS ARE LESS THAN 80% OF HIS ADJUSTED PRE-DISABILITY EARNINGS

At all times, Aitken's post-disability earnings have been significantly less than 80% of his adjusted pre-disability earnings. Prior to his disability and while working as Group CFO, Aitken was earning $180,000 per year. (969). Immediately after his date of disability, Aitken began working as Director of Acquisitions earning $100,000 per year – or approximately 55.60% of his pre-disability earnings. (969, 765). His salary was further reduced to $60,000 – or 33.33% of his pre-disability earnings – as of March 30, 2015. (775). As such, a preponderance of the evidence not only shows that Aitken is incapable of performing the material duties of his own occupation, but also that he was

15

not earning more than 80% of adjusted pre-disability earnings.  As a result, he is entitled to LTD benefits.

## III.  AETNA'S EVIDENCE IS INSUFFICIENT TO CREATE A QUESTION OF FACT

As discussed above, there are no issues of fact as a preponderance of the evidence supports Aitken's inability to perform the material duties of his own occupation as a result of his coronary artery disease.  Nonetheless, Aetna will no doubt point to the opinions of file review physician, Dr. Veneziano, and the occupational assessments of in-house vocational consultant, Janet Clifton in support of its cross-motion for summary judgment.  However, for the reasons discussed below, the opinions of Aetna's doctor and vocational consultant are insufficient to create an issue of fact or to refute the overwhelmingly supportive and consistent opinions/evidence of Aitken's treating doctors.

### A.  DR. VENEZIANO'S OPINIONS HAVE NO EVIDENTIARY VALUE

Dr. Veneziano's opinions have no evidentiary value because he twice ignored the significance of stress on Aitken's ability to perform the duties of his own occupation.  In his initial report dated January 18, 2016, Dr. Veneziano discusses Aitken's abilities to: climb, crawl, kneel, lift, pull, push, reach above the shoulder, reach forward, carry, bend, twist, grip, perform fine and gross manipulations, sit, stand, stoop, walk, travel and deal with environmental conditions.  (632-634).  But, with the exception of extensive air travel, Aitken's ability to perform the physical duties of his own occupation as Group CFO is irrelevant because Aitken is claiming a partial disability and has been working in less stressful/demanding jobs since the date of his disability.  There is no dispute that Aitken can perform a sedentary desk job and work 8-hours per day.

Rather, what is relevant and in dispute, is whether Aitken has the ability to handle stressful and pressure-filled situations and environments – a point curiously ignored by Dr. Veneziano when assessing Aitken's restrictions and limitations in his initial report.

Further, despite reviewing Dr. Cohen's Rebuttal Report, Dr. Veneziano ignored the impact of

16

stress on Aitken's ability to work as a Group CFO for a second time.[5]  (607-610).  Instead, when addressing Aitken's restrictions and limitations, Dr. Veneziano's second report dated February 10, 2016 focuses on whether Aitken's inability to travel extensively is supported by the record.  (608-609).  While this is also a point of contention between the parties,[6] Dr. Veneziano's failure to address the most important reason for Aitken's disability (*e.g.*, the effect of stress on Aitken's functional capacity) renders his report incomplete and of no evidentiary value.

### B.    MS. CLIFTON'S OPINIONS HAVE NO EVIDENTIARY VALUE

Ms. Clifton's opinions have no evidentiary value because she: (1) considered the wrong occupation when performing her occupational analysis; (2) ignored the effects of stress on Aitken's ability to perform the duties of his own occupation as Group CFO; (3) failed to consider Dr. Kincaid's Vocational Evaluation; (4) mischaracterized the nature of Aitken's own occupation as Group CFO; and (5) mischaracterized the nature of Aitken's subsequent job as Director of Acquisitions.

First, Ms. Clifton considered the wrong occupation when performing her April 27, 2015 own occupation analysis.  (486-489).  Specifically, Ms. Clifton mistakenly assessed whether Aitken's restrictions and limitations (*e.g.*, no undue stress and limited travel) would allow him to perform the duties of his occupation as Director of Acquisitions.  (486-487).  However, Aitken's own occupation was that of a Group CFO.  The record is clear that prior to his disability, Aitken worked as a Group CFO, and immediately following his date of disability, Aitken began working as Director of

---

[5] His only mention of stress can be found on the top of page 5 of Dr. Veneziano's February 10, 2016 Report where he questions whether Aitken's symptoms of stress can be related to anxiety as opposed to ischemia.  (609).  Notably, there is no evidence that Aitken suffers from Anxiety.

[6] While Dr. Veneziano claims that there is no basis for restricting Aitken's air travel (633), Dr. Cohen explained that Aitken must avoid extensive or frequent airplane travel because "Mr. Aitken reported his worst episodes of atrial fibrillation, exhaustion, headaches and nausea after he undertook extensive airline travel.  His symptoms were made worse by travelling between multiple time zones, and then working after such flights without a sufficient recover/rest period" – something not possible in his job as Group CFO.  (613).

Acquisitions.   So, there is no question that Aitken can perform the duties of a Director of Acquisitions.[7]  Rather, the proper inquiry is whether Aitken's restrictions and limitations prevent him from working in his own occupation as a Group CFO.    Indeed, the record reveals that Aitken's restrictions and limitations – namely his inability to handle stress and extensive travel – prevent him performing the duties of a Group CFO position.

        Second, Ms. Clifton ignored the effects of stress on Aitken's ability to perform the duties of his own occupation.[8]   By using the wrong occupation in her April 27, 2015 own occupation analysis, Ms. Clifton never assessed whether Aitken's inability to deal with stress/pressure would prevent him from working as a Group CFO.  Inasmuch as high levels of stress are inherent in the performance of a Group CFO position in the general economy, and since Aetna conceded that Aitken cannot handle undue stress, a proper vocational analysis reveals that Aitken is disabled as defined by the Policy.

        Third, Ms. Clifton did not review or consider Dr. Kincaid's October 20, 2015 Vocational Evaluation.  As discussed under Section I(B) above, there is no evidence in the administrative record proving that Ms. Clifton considered Dr. Kincaid's report.  (262-264, 520-522, Exhibit A).  While Ms. Clifton did re-review Aitken's claim on December 18, 2015 following the submissions of his appeal, her review was once again limited to Image No. 16743123 (*e.g.*, pages 972-985 of the Administrative Record) (Exhibit A), which corresponds to the job description provided with Aitken's LTD application.  (520-521).   Ms. Clifton's failure to consider this important document renders her post-appeal review and assessment incomplete and of no evidentiary value.

        Fourth, in her February 26, 2015 Vocational Review, Ms. Clifton mischaracterized the nature

---

[7] In fact, Ms. Clifton's conclusions confirm that Aitken's job as Director of Acquisitions was not stressful and did not require frequent travel.  (488-489).  She stated, "the information provided in 16743123 was reviewed and it suggests that travel and stress…is [*sic*] not required of the job." (*Id.*)

[8] Although a point of contention between the parties, Ms. Clifton also never considered the effects of extensive airplane travel on Aitken's ability to perform the duties of a Group CFO position.

of Aitken's own occupation as Group CFO.  (460-461).  In her review, Ms. Clifton mistakenly found

that Aitken's occupation "most closely correlates" to two occupations – President, Financial

Institution (DICTIONARY OF OCCUPATIONAL TITLES ("DOT") 186.117-054) and Manager, Retail

Stores (DOT 185.167-046).  (461).  This comparison on its face is incorrect.

The combination of jobs does not relate to Aitken's occupation as Group CFO.  For instance,

a President of a Financial Institution plans and directs the financial policies and practices of banks,

savings bank, commercial bank, trust company, mortgage company, credit union, *etc.*   *See*

http://www.occupationalinfo.org/.  A Manager of a Retail Store manages a retail store that sells a

specific line of products by personally performing or supervising employees in, for example, preparing

work schedules, formulating pricing policies, coordinating sales promotions and supervising

employees engaged in sales work. *Id.*  But, Aitken did not work in a financial institution, nor did he

work in a retail store selling merchandise.  Rather, he worked as Group CFO in a corporate office of

a company that sells sunrooms and glass enclosures.  (714).  He was responsible for such things as:

managing the financial functions of the companies and Retail Operations; overseeing the day to day

strategic and commercial management of a budget in excess of $100 million in revenues for the Home

Improvement Group; and overseeing the financial management of Retail Operations of $17 million

in revenues.  (672, 678, 683, 714, 975).  Accordingly, his occupation is not equivalent to either a

President, Financial Institution or a Manager, Retail Stores.[9]

---

[9] Aitken's vocational expert, Dr. Kincaid agreed that Aetna's own comparison was improper and
found that Aitken's own occupation better resembles that of a Controller (DOT 160.167-058).  (686-
687).  He stated: "Mr. Aitken was working for Four Season Solar, which manufactures and sells
sunrooms and glass enclosures.  It is not a financial institution and he did not work in a retail store.
Financial institutions would be organizations that manage financial transactions, such as stock market
investments, debentures, bank loans, and credit, which were not part of Mr. Aitken's job description.
[…]  By including two job titles that do not accurately encapsulate Mr. Aitken's past work, the
methodological procedures followed are invalidated.  He does not have transferrable skills for the job
titles listed by Aetna.  Thus it is misleading to report that he would be employable in those job
positions." [686-687].

Even assuming his own occupation was equivalent to a President of a Financial Institution, Ms. Clifton ignored the level of stress associated with that job.  Notably, a President of a bank or mortgage company, for example, is at least as stressful as a Group CFO position (if not more stressful).  Therefore, Aitken's inability to handle stressful and pressure-filled job environments, as conceded by Aetna, would necessarily preclude him from working as a President, Financial Institution.

Finally, in her February 26, 2015 and April 27, 2015 reviews, Ms. Clifton mischaracterized the nature of Aitken's subsequent job as Director of Acquisitions.  In her reviews, Ms. Clifton mistakenly found that Aitken's post-disability job most closely correlates to a Manager, Sales (DOT code 163.167-018).  (461, 487-498).  Again, Ms. Clifton's comparison is inaccurate.

A Sales Manager manages the sales activities of a business by directing staffing, training and performance evaluations to develop and control sales programs; coordinating sales distribution; assigning sales territories to sales personnel; analyzing sales statistics; reviewing market analyses to determine customer needs; directing product simplification and standardization; *etc.*   *See* http://www.occupationalinfo.org/.   However, Aitken's job as Director of Acquisitions was not in a sales capacity, nor did he have managerial responsibilities.  Rather, as Director of Acquisitions, Aitken's main duties consisted of preparing, conducting and consolidating market research on potential business segments; preparing financial and commercial assessments of potential business opportunities; performing due diligence on acquisitions; and performing financial related duties for the Group CFO and/or principle shareholder.  (981).  As such, the position of Manager, Sales does not even remotely compare to Aitken's post-disability job as Director of Acquisitions. [10]

---

[10] Dr. Kincaid agreed that Aetna's analysis of Aitken's job as Director of Acquisitions was improper and found that Aitken's post-disability job was more akin to a Market Research Analyst I (DOT 0503064-014).  He noted that even assuming Aitken's job as Director of Acquisitions was equivalent to a Sales Manager positions, Aitken does not have transferrable skills to allow him to work as a Sales Manager as "he never worked in the sales capacity." (687).  Dr. Kincaid further explained that Ms.

## IV.     EVEN IF, *ARGUENDO*, THE STANDARD OF REVIEW WERE ARBITRARY AND CAPRICIOUS, AETNA'S DETERMINATION SHOULD BE REVERSED

An administrator's determination is arbitrary and capricious if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *McCauley v. First UNUM Life Ins. Co.*, 551 F.3d 126, 138 (2d Cir. 2008) (finding UNUM's determination to be unreasonable). *See also*, *Neely v. Pension Trust Fund*, 2004 U.S. Dist LEXIS 27777 *25 (E.D.N.Y. Dec. 8, 2004) (stating "a review must include a 'searching and careful' determination as to whether the conclusion reached by the administrator in view of the facts before it was indeed rational and not arbitrary.").

The Supreme Court recently clarified what is meant by a deferential standard of review. Deference "does not mean that the plan administrator will prevail on the merits. It only means that the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Conkright v. Frommert*, 130 S.Ct. 1640, 1651 (2010), citing *Firestone*, 489 U.S. at 111. In assessing the reasonableness of an insurer's determination, the Court must be mindful of the insurer's status as a plan fiduciary. The Supreme Court has indicated that ERISA imposes "higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator 'discharge [its] duties' in respect to discretionary claims processing 'solely in the interests of the plan participants and beneficiaries' of the plan, §1140(a)(1); [and] it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators 'provide a 'full and fair review' of claim denials.'" *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2350 (2008).

Here, Aetna's denial of benefits should be reversed because (A) Aetna's determination was not reasonable; and (B) Aetna deprived Aitken of a full and fair review.

---

Clifton's analysis "lack validity," stating that: "Incompatible job titles were used that create a misleading perception of his employability. The reviewers ignored requirements of the job titles chosen by them to represent his work history that are clearly greater than his functional capacity according to his treating cardiologist." (689).

## A.     AETNA'S DETERMINATION WAS NOT REASONABLE

A court must set aside a determination when it is not reasonable.  *See McCauley*, 551 F.3d at 138.  In determining reasonableness, the Court should apply a "rational claims administrator" standard.  *Id.* at 136 ("we do not believe that a rational claims administrator could have reviewed the limitations and symptoms listed in the memorandum and found that the physician's earlier narrative comported with those medical conditions.").  In this case, Aetna's determination was not reasonable because it: (1) unreasonably failed to consider the impact of stress/pressure on Aitken's ability to perform his own occupation; and (2) unreasonably misclassified Aitken's own occupation.

### 1.   Aetna Unreasonably Failed To Consider The Impact Of Stress/Pressure On Aitken's Ability To Perform The Material Duties Of His Own Occupation

Although Aitken's treating doctors consistently stated that Aitken cannot handle stressful and pressure filled situations and work environments, Aetna unreasonably ignored this aspect of his claim.  In their respective APS forms and narrative reports, Drs. Cohen and Gupta both stated that Aitken must avoid high stress and pressure environments.  (662, 663, 961, 985).  Further, in his February 3, 2016 Rebuttal Report, Dr. Cohen stated that while Aitken can work in a lower stress job, "he cannot handle stressful or pressure filled situations as these cause a significant increase in symptoms, which could result in further cardiac events."  (613).  Dr. Cohen further stated Aitken's inability to deal with stress "is the main cause of his disability – along with his inability to travel extensively and handle a heavy workload.  When he was working as Group CFO, his symptoms were significantly worse, which I attribute largely to the stress of the job.  His current job in accounting is not nearly as stressful, and his symptoms have improved to an extent."  (613).  Despite these emphatic statements, Aetna ignored Aitken's inability to handle stress.

First, in its initial denial letter dated May 12, 2015, Aetna conceded that Aitken cannot handle undue stress, but simply stated that based on its vocational consultant's review, Aitken: "is able to perform the material duties of his own occupation of Chief Financial Officer [which was found to be

sedentary or light in nature] within the limitations provided [by Aitken's cardiologist]." (249).   Aetna

failed to provide any explanation as to how Aitken could perform the duties of his occupation despite

his admitted inability to handle stress – especially in light of the high levels of stress inherent in a

Group CFO position in the general economy.  (683).

      <u>Second</u>, in its final denial dated February 11, 2016, Aetna compounded its error by again

ignoring Aitken's inability to handle stressful and pressure-filled situations.  In coming to its final

determination, Aetna relied on the opinions of file review physician, Dr. Veneziano, who also does

not dispute Aitken's inability to handle stressful situations.[11]  (632-633).  However, Dr. Veneziano

failed to explain how Aitken is capable of performing the duties of his own occupation given his

inability to deal with stress.  (*Id.*)  Even after Dr. Cohen explained in his Rebuttal Report that Aitken's

inability to deal with stress is the main cause of his disability, Dr. Veneziano again ignored the impact

of stress on Aitken's ability to work as a Group CFO.  (607-610).  Instead, when addressing Aitken's

restrictions and limitations, Dr. Veneziano's second report dated February 10, 2016 focuses on

whether Aitken's inability to travel extensively is supported by the record.  (608-609).  Therefore,

Aetna's determination is unreasonable because it failed to consider the impact of stress on Aitken's

ability to perform the material duties of his own occupation as Group CFO.

      2.  <u>Aetna Unreasonably Misclassified Aitken's Own Occupation</u>

      In its initial denial letter, Aetna correctly classified Aitken's own occupation as that of a Group

CFO.  (249).  However, without any explanation, in its final denial letter, Aetna unreasonably and

arbitrarily claimed that Aitken's own occupation was that of a Group CFO <u>and</u> Director of

---

[11] In his January 18, 2016 Report, Dr. Veneziano stated, "In my opinion, based on the available medical record[,] Dr. Cohen's restrictions and limitations as stated in his AP statement dated 1/23/2015, are mostly supported.  (632).  Notably, the only one of Dr. Cohen's restrictions and limitations to which Dr. Veneziano objected was Aitken's inability to tolerate extensive air travel. (632-633).

Acquisitions. (263). Contrary to this conclusion, Aitken did not have 2 jobs at the time of his disability. Rather, as discussed above, at the time his disability began, Aitken was working as a Group CFO for Four Season. (714, 949, 969, 978). Immediately thereafter, Aitken transitioned to the role of Director of Acquisitions, a far less demanding and stressful job. (969, 978-981). It is clear that Aetna was looking for a reason to deny Aitken's claim because the restrictions and limitations acknowledged by Aetna prevent Aitken from working in his own occupation as Group CFO.

## B.     AETNA DEPRIVED AITKEN OF A FULL AND FAIR REVIEW

The failure to provide a claimant with a full and fair review under ERISA §503 renders a determination arbitrary and capricious. *See, e.g., Crocco v. Xerox Corp.*, 137 f.2d 105, 108 (2d Cir. 1998) (noting that the failure to provide a full and fair review renders a decision arbitrary and capricious). Here, Aetna failed to provide Aitken with a full and fair review by failing to consider all of the medical and vocational evidence.

Pursuant to 29 C.F.R. §2560.503-1(h)(2)(iv) and (h)(4), to provide a full and fair review, Aetna must "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." Here, among other things, Aetna failed to consider Dr. Kincaid's vocational assessment. There is absolutely no evidence in the administrative record proving that Aetna's appeal representative or vocational consultant considered Dr. Kincaid's report. (262-264, 520-522, 541-544, Exhibit A). Although Aetna is not required to give special weight to the opinions of Dr. Kincaid, it cannot "arbitrarily refuse to credit a claimant's reliable evidence" as they did in this case. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

As discussed *supra* under section I(B), the fact that Dr. Kincaid's vocational assessment may have been reviewed by peer review physician, Dr. Veneziano, is of no consequence. *See Schuman*, 2017

U.S. Dist. LEXIS 39388 *40 (noting that the peer reviewer is a doctor whose review was intended to evaluate the medical evidence – not the vocational evidence, and stating: "it would be wholly unreasonable for the appellate reviewer to rely on [the peer review physician's] assessment of the [vocational report] in order to determine whether its critique of the initial vocational assessment was valid."). As such, Aetna's failure to consider all of the evidence submitted renders its decision arbitrary and capricious.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's motion for summary judgment should be granted in its entirety.

Dated:  New York, New York
        August 4, 2017

                                        Respectfully submitted,

                                        /s/ Paul M. Kampfer
                                        Paul M. Kampfer (PK 9186)
                                        RIEMER & ASSOCIATES LLC
                                        60 East 42nd Street, Suite 1750
                                        New York, New York 10165
                                        (212) 297-0700
                                        pkampfer@riemerlawfirm.com

<u>CERTIFICATE OF SERVICE</u>

       I certify that on August 4, 2017, I served a true and complete copy of the foregoing Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment by transmitting the same by electronic mail to the following individuals at the e-mail address indicated.

Patrick W. Begos
Robinson & Cole LLP
1055 Washington Boulevard
Stamford, Connecticut 06901
(203) 462-7550
<u>pbegos@rc.com</u>

       I also certify that this document was filed through the ECF system and will be sent electronically to all registered participants on August 4, 2017.

Dated:  August 4, 2017
       New York, New York

                      <u>/s/ Paul M. Kampfer     </u>
                      Paul M. Kampfer (PK 9186)
                      RIEMER & ASSOCIATES LLC
                      60 East 42nd Street, Suite 1750
                      New York, New York 10165
                      (212) 297-0700
                      <u>pkampfer@riemerlawfirm.com</u>